UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN WALLACE,

        Petitioner,

                                    CASE NO. 2:08-CV-11551

  v.                            JUDGE NANCY G. EDMUNDS

                                    MAGISTRATE JUDGE PAUL J. KOMIVES

THOMAS BELL,

        Respondent.

_____/

### REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION (docket #1) and MOTIONS FOR RELEASE FROM CUSTODY (docket #3 & #7)

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Claims Relating to Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.    *Cause and Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            a. Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            b. Prejudice–Sentencing Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            c. Prejudice–Presentence Report Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            d. Prejudice–Plea Validity Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        3.    *Fundamental Miscarriage of Justice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    D.    *Claims Relating to Parole Board* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    E.    *Petitioner's Motion for Release from Custody* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner's motion for release from custody.

II.    REPORT:

A.    *Procedural History*

        Petitioner Steven Wallace is a state prisoner currently confined at the Parr Highway Correctional Facility in Adrian, Michigan. Petitioner was convicted of one count of using a

computer to solicit, entice, or accost a minor for immoral purposes, and two counts of using a computer to disseminate sexually explicit material, pursuant to his October 16, 2006, guilty plea in the Mecosta County Circuit Court.  In exchange for his guilty plea, the prosecutor dismissed the information charging petitioner as an habitual offender–fourth offense.  On November 27, 2006, petitioner was sentenced to a term of imprisonment of 20 months to 10 years on the computer solicitation conviction, and to concurrent terms of imprisonment of 20 months to 4 years on the dissemination convictions.  In November 2007, petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

> I.     THE COURT ASSESSED TOO MANY POINTS FOR OFFENSE VARIABLE 10, AND GIVEN THIS ERROR THE SENTENCE IMPOSED WAS BASED ON INACCURATE INFORMATION AND DEFENDANT SHOULD BE ALLOWED TO ADDRESS THE COURT AS TO WHY A MORE LENIENT SENTENCE SHOULD BE IMPOSED, AND THEREFORE DEFENDANT IS ENTITLED TO BE RESENTENCED.

> II.    THE TRIAL COURT ORDERED THAT OV 13 SHOULD BE REDUCED FROM 25 POINTS TO ZERO POINTS ON EACH OF THE REPORTS, BUT THE PROBATION DEPARTMENT FAILED TO IMPLEMENT THE CORRECTION, CAUSING DEFENDANT GREATER HARDSHIP WITHIN THE MDOC, AND THEREFORE THIS COURT SHOULD REMAND FOR CORRECTION OF OV 13 WITH RESPECT TO THE VIOLATION OF MCL 750.145(D)(2)(C).

> III.   WHETHER THIS CASE SHOULD BE REMANDED BACK TO CIRCUIT COURT IN ORDER FOR DEFENDANT TO REQUEST TO WITHDRAW HIS PLEA AND FOR A *GINTHER* HEARING IN SUPPORT OF HIS MOTION TO WITHDRAW HIS PLEA.

On January 22, 2008, the court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *People v. Wallace*, No. 281951 (Mich. Ct. App. Jan. 22, 2008).  Petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court, but his application was rejected for filing because it was submitted

beyond the 56-period for seeking leave to appeal set forth in MICH. CT. R. 7.302(C)(2).   The

Michigan Parole Board has denied petitioner parole at least once since his conviction in this case.[1]

Petitioner filed this application for the writ of habeas corpus on April 10, 2008.  In his initial

application, petitioner challenges the composition of the Parole Board and the standards used to

determine his eligibility and fitness for parole.  Specifically, petitioner contends that the amendments

to the Michigan parole statutes effected by 1992 Mich. Pub. Act 181 are unconstitutional because:

(1) the bill was not properly enacted by the Michigan legislature; (2) the law violates the separation

of powers guaranteed by the Michigan Constitution; and (3) the law constitutes an impermissible

ex post facto law.  On September 11, 2008, petitioner filed both a memorandum of law in support

of his petition and an "Answer to Respondent's Pleading."  In these briefs, petitioner reiterates his

challenges to the Michigan parole statutes, and also asserts the substantive challenges to his

conviction that he raised in Michigan Court of Appeals.[2]   Respondent filed an answer to the

petition on October 22, 2008.  Respondent contends that petitioner's claims relating to his conviction

are procedurally defaulted and without merit, and that petitioner's claims relating to the Michigan

Parole Board are not cognizable on habeas review.

In addition to the habeas application, petitioner filed a motion for release from custody on

April 10, 2008.  In this motion, petitioner seeks release pending a determination of his habeas

claims.  For the reasons that follow, the Court should deny this motion and should deny petitioner's

application for the writ of habeas corpus.

---

[1]Petitioner is apparently incarcerated, or was at some point, for a prior April 2006 conviction for delivery of marijuana.

[2]By Order entered this date, I have granted petitioner's June 14 and June 19, 2008, motions to amend, to the extent that they seek leave to amend to assert the challenges to petitioner's conviction set forth in his September 11, 2008, briefs.

B.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

4

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

C.      *Claims Relating to Conviction*

In his briefs filed after the filing of his initial habeas application, petitioner appears to raise the challenges to his conviction and sentence that he raised in the Michigan Court of Appeals. Specifically, in these claims petitioner contends that: (1) the trial court improperly scored Offense Variable 10 and relied upon inaccurate information in sentencing him; (2) the probation department failed to correct the presentence report to reflect the trial court's scoring of Offense Variable 13; and (3) his plea was involuntary and unknowing because his attorney rendered constitutionally ineffective assistance. The Court should conclude that petitioner is not entitled to habeas relief on these claims because they are procedurally defaulted.

1.      *Procedural Default*

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir.

6

1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner's claims challenging his conviction are undoubtedly defaulted. Although petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court, his application was rejected because it was filed outside the 56-day time limit for filing such an application set forth in MICH. CT. R. 7.302(C)(2). This rejection of petitioner's filing constitutes a clear and express reliance on a firmly established and regularly followed state procedural rule, and thus bars consideration of petitioner's habeas claims. *See Figel v. Luoma*, No. 2:05-CV-124, 2008 WL 3539754, at *2-*3 (W.D. Mich. Aug. 12, 2008); *Evans v. Metrish*, No. 06-CV-13660, 2008 WL 2242549, at *7 (E.D. Mich. May 30, 2008) (Cleland, J.). Thus, the Court may not review petitioner's habeas claims unless he can establish the applicability of an exception to the procedural default rule.

2.    *Cause and Prejudice*

The first exception to the procedural default rule is the cause and prejudice exception. Under this exception, review of an otherwise barred claim is allowed if petitioner is able to demonstrate cause for, and prejudice attributable to, his default. *See Coleman*, 501 U.S. at 750; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).

*a. Cause*

To establish "cause," petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also*, *Coleman*, 501 U.S. at 753. Here, petitioner has not identified, and the

7

state court records do not reveal, any objective factor external to the defense which prevented petitioner or his counsel from timely filing an application for leave to appeal in the Michigan Supreme Court.  Nor could petitioner rely on appellate counsel's failure to timely file the application as cause.

While constitutionally ineffective assistance of counsel may constitute cause to excuse a procedural default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray*, 477 U.S. at 488, counsel's allegedly constitutionally deficient performance cannot constitute cause here, for two reasons.  First, as noted above, petitioner has not exhausted any ineffective assistance of appellate counsel claim as an independent claim in the state courts.  As the Supreme Court has observed, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause.  *Edwards*, 529 U.S. at 451 (citing *Murray*, 477 U.S. at 488-89).  In order to constitute cause, however, counsel's performance must amount to ineffective assistance of counsel under the Sixth Amendment.  *See id.*  "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim."  *Id.*  For this reason, the ineffective assistance claim which is asserted as cause must itself be both exhausted, *see id.* at 451-52 (discussing *Murray*, 477 U.S. at 489), and not procedurally defaulted, *see id.* at 452-53.  Here, petitioner has never presented, in any fashion, a claim that his appellate counsel was ineffective for failing to timely file an application for leave to appeal in the Michigan Supreme Court.  Such a claim is therefore unexhausted, and cannot be used as a basis to establish cause to overcome his procedural default.  *See Lott v. Coyle*, 261 F.3d 594, 608-09 (6th Cir. 2001).

Second, appellate counsel's failure to timely file petitioner's application for leave to appeal

8

in the Michigan Supreme Court cannot constitute cause to excuse petitioner's procedural default because, at that point, petitioner had no constitutional right to counsel. Under Michigan law, a defendant may seek an appeal in the Michigan Supreme Court; however, such an appeal is discretionary. *See* MICH. CT. R. 7.302. Because only a constitutional violation of the right to counsel constitutes a factor "external to the defense," counsel's ineffectiveness in pursuing petitioner's discretionary appeal cannot constitute cause to excuse his procedural default. *See Coleman*, 501 U.S. at 752; *Ritchie v. Eberhart*, 11 F.3d 587, 591-92 (6th Cir. 1993); *Gentry v. Trippett*, 956 F. Supp. 1320, 1326 (E.D. Mich. 1997).

Because petitioner must establish both cause and prejudice, his failure to establish cause makes it unnecessary to consider the prejudice issue. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Nevertheless, as noted below even if petitioner could establish cause, he cannot establish prejudice because his claims are without merit. *See Nunn v. Yukins*, No. 98-2309, 2000 WL 145378, at *1 (6th Cir. Feb. 4, 2000) (no prejudice where defaulted claims were meritless); *Jacobs v. Scott*, 31 F.3d 1319, 1328 (5th Cir. 1994) (same); *Alvarez v. Straub*, 64 F. Supp. 2d 686, 696 (E.D. Mich. 1999) (Rosen, J., adopting Report & Recommendation of Komives, M.J.) (same).

### b. Prejudice–Sentencing Claim

In his first conviction related claim, petitioner contends that the sentencing court erred in scoring Offense Variable 10, and that this misscoring was based on inaccurate information. To the extent that petitioner challenges the scoring of his sentencing guidelines, he does not raise a cognizable habeas claim. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507,

9

1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines range raises an issue of state law that is not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

Petitioner also suggests that his sentence was based on inaccurate information, relying on *Townsend v. Burke*, 334 U.S. 736 (1948), which established the proposition that the Due Process Clause prohibits a sentence which is based on inaccurate factual information. The problem with this argument, however, is that petitioner does not allege that there was any materially inaccurate factual information. Rather, petitioner complains of *legal* errors in the state court's interpretation of the sentencing guidelines. Petitioner was scored at 15 points for exploitation of a vulnerable victim. *See* MICH. COMP. LAWS § 777.40(1)(a). Petitioner's counsel argued that the conduct shown by the prosecution did not amount to predatory conduct under OV10. The trial court disagreed. *See* Sentence Tr., at 10-11. Petitioner does not claim that any of the facts relied upon by the judge were inaccurate, only that those facts did not establish the necessary predicate for scoring OV10 at 15 points. This is an argument that the court misapplied OV10 as a legal matter, and thus does not establish that the court relied upon materially inaccurate information in imposing sentence.

10

### c. Prejudice–Presentence Report Claim

In his second claim, petitioner contends that although the trial court sustained his objection to the scoring of OV13 and ordered that it be scored at zero points, the presentence report was amended to reflect a scoring of five points. Petitioner does not contend that the sentence imposed by the court was affected, but only that the misscoring on the presentence report has caused him unspecified "hardship" within the Michigan Department of Corrections. This claim is without merit.

There is no federal constitutional right to a pre-sentence investigation and report. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001). Therefore, the mere presence of inaccurate information in a pre-sentence report does not constitute a denial of due process so as to entitle a petitioner to habeas relief. *See id.* Even where there is an alleged factual inaccuracy in a pre-sentence report, a court need not resolve the dispute when the information is not relied on in arriving at the sentence that was imposed. *See Warren v. Miller,* 78 F. Supp. 2d 120, 131 (E.D.N.Y. 2000). As noted above, petitioner cannot show that any materially false facts were relied upon by the trial court in imposing sentence.

The fact that this information may impact petitioner's placement within the corrections system does not compel a different conclusion. A prisoner has no inherent constitutional right to be incarcerated in a particular institution, or to enjoy a particular security classification. *See Meachum v. Fano*, 427 U.S. 215, 222 (1976); *Montanye v. Haynes*, 427 U.S. 236, 242 (1974). Thus, the fact that alleged inaccuracies in the presentence report may impact the decision of prison officials with respect to their placement decisions does not raise a cognizable habeas claim. *See Mauldin v. Stansberry*, No. 5:06-HC-2023, 2007 WL 2904147, at *2 (E.D.N.C. Feb. 1, 2007); *Locklear v. Holland*, No. 98-6407, 1999 WL 1000835, at *2 (6th Cir. Oct. 28, 1999); *cf. Williams*

*v. Federal Bureau of Prisons*, 85 Fed. Appx. 299, 304 (3d Cir. 2004). Nor is any claim that this inaccurate information may be used to deny him parole cognizable, because such a claim is not ripe. "If a defendant claims to be detrimentally affected by the use of an inaccurate PSR in decisionmaking as to parole . . . he should challenge such use in the parole proceedings." *Hili v. Sciarotta*, 140 F.3d 210, 216 (2d Cir. 1998). Any further relief must be sought in a separate habeas action challenging the denial of parole, after state court remedies with respect to the parole denial have been exhausted. *See id*; *United States v. Martin*, No. 89-3548, 1990 WL 136115, at *1 (6th Cir. Sept. 20, 1990). The mere possibility that this information may affect parole eligibility in the future, therefore, does not provide a cognizable basis for habeas relief at this time.[3]

### d. Prejudice–Plea Validity Claim

Finally, petitioner contends that his plea was involuntary and unintelligent because it was the result of his trial counsel's ineffective assistance. This claim is without merit.

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

---

[3]As explained in part D, *infra*, although petitioner challenges the parole statutes here it is questionable whether he is challenging a specific denial of parole, and to the extent he is raising such a challenge he has nowhere argued that the denial of parole was improper because it was based on inaccurate information in the presentence report. In any event, the records for petitioner's most recent parole denial do not reflect any reliance by the Board on the scoring of OV13. *See* Parole Guidelines Scoresheet, dated 9/15/08 (docket #19-7, at 5-7); Parole Eligibility/Lifer Review Report (docket #19-7, at 8-9).

"The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id.* at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action

13

'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.  Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828.  However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him.  As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher*, 199 F. Supp 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*,

14

174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

Here, petitioner does not appear to challenge the voluntariness of the plea itself. He does not argue that he lacked an understanding of the nature of the charges against him or the consequences of his plea. Rather, he contends that his plea was involuntary because counsel failed to conduct an adequate investigation, which would have uncovered evidence that he was not guilty. However, petitioner does not identify with specificity any witnesses counsel should have interviewed, any avenues of investigation counsel should have pursued, or any specific motions that counsel should have filed. Petitioner's conclusory allegations are insufficient to establish that counsel was ineffective. *See Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) (Friedman, J.); *Matura v. United States*, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995). Thus, petitioner's ineffective assistance of counsel claim is without merit.

3.    *Fundamental Miscarriage of Justice*

Under a second exception, known as the "fundamental miscarriage of justice" exception, petitioner can still have his procedurally barred claims reviewed if he can show that the constitutional errors he alleges "'ha[ve] probably resulted in the conviction of one who is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496); *accord Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). "[T]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (internal quotation omitted)); *accord Kuhlmann*, 477 U.S. at 455 n. 17 (citation

omitted).

Petitioner does not argue that he is factually innocent of the charges for which he was convicted. More importantly, he has not presented any new, reliable evidence not presented in the state courts to show his innocence. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). Thus, this exception is inapplicable.

In view of the foregoing, the Court should conclude that petitioner's conviction-related claims are barred by petitioner's procedural default in the state courts, and that neither the cause and prejudice nor fundamental miscarriage of justice exceptions to the procedural bar have been established. Accordingly, the Court should deny petitioner's application with respect to these claims.

D.    *Claims Relating to Parole Board*

With respect to petitioner's challenges to the Parole Board, while not entirely clear it does not appear that petitioner is directly challenging any of the Board's decisions denying him release on parole. To the extent he is raising such a direct challenge to the denial of parole, his claim is without merit. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend XIV, § 1. By its terms, therefore, the particular procedures required by the clause apply only to deprivations of "life, liberty, or property;" they do not apply to deprivations of other interests. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). In

16

this case, petitioner has no liberty or property interest in being released on parole, and thus the Due

Process Clause does not require the state to follow any particular procedures.

"A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or

(2) from a state or federal statute." *Ho v. Greene*, 204 F.3d 1045, 1058 (10th Cir. 2000). *See*

*generally*, *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). As to the first, of its own force "[t]he

[D]ue [P]rocess [C]lause does not guarantee an inmate a right to parole." *Marshall v. Mitchell*, 57

F.3d 671, 672 (8th Cir. 1995); *accord Greenholtz v. Inmates of Neb. Penal & Correctional Complex*,

442 U.S. 1, 7 (1979); *Mayberry v. Hudson*, No. 92-2358, 1993 WL 147575, at *1 (6th Cir. May 5,

1993) (citing *Greenholtz* and *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987)). Thus, petitioner

has a protected liberty interest only if Michigan law creates such an interest. In the parole context,

whether a state law creates a protected liberty interest "turn[s] on the presence or absence of

language creating 'substantive predicates' to guide discretion." *Kentucky Dep't of Corrections v.*

*Thompson*, 490 U.S. 454, 462 (1989). Thus, to create a liberty interest the regulations at issue must

"contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the

regulations' substantive predicates are present, a particular outcome must follow[.]" *Id*. at 463;

*accord Marshall*, 57 F.3d at 672. Under Michigan law, "a prisoner's release on parole is

discretionary with the parole board." MICH. COMP. LAWS § 791.234(8); *see also*, *People v. Moore*,

164 Mich. App. 378, 387-88, 417 N.W.2d 508, 512 (1987). Thus, "Michigan's state statutes do not

create an explicit entitlement to parole," and thus do not give rise to a protected liberty interest.

*White v. Kelly*, 82 F. Supp. 2d 1184, 1189 (D. Colo. 2000) (considering federal prisoner's challenge

to denial of parole hearing by Michigan authorities); *accord Mayberry*, 1993 WL 147575, at *1

(same); *Canales v. Gabry*, 844 F. Supp. 1167, 1171 (E.D. Mich. 1994) (Gilmore, J., adopting Report

17

of Morgan, M.J.) (same); *cf. Marshall*, 57 F.3d at 672-73.  As the Sixth Circuit has explained:

> After *Olim* [*v. Wakinekona*, 461 U.S. 238 (1983)] and *Inmates* [*of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233 (6th Cir. 1991)], it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights[.] . . .  The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole.  So long as the parole discretion is broad, as in Michigan, "the State has not created a constitutionally protected liberty interest" by enacting procedural rules. *Olim*, 461 U.S. at 249.  The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such rules as a matter of *federal* due process.

*Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) (footnote and parallel citation omitted) (emphasis in original); *see also*, *Moore v. Hofbauer*, 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001) (Tarnow, J.).  Because petitioner has no liberty interest in parole, he cannot show that he was denied any liberty interest without due process of law by the Board's failure to grant him release on parole, or by the Board's alleged failure to follow any particular parole procedures.  *See Johnson v. Renico*, 314 F. Supp. 2d 700, 713 (E.D. Mich. 2004).

Petitioner challenges the constitutional validity of 1992 Mich. Pub. Act 181, which amended Michigan's parole statutes and became effective on September 22, 1992.  Petitioner alleges that John Engler, the Governor of the State of Michigan at the time, illegally altered or amended the legislative bill and therefore the amended statute is unconstitutional and void under the Michigan constitution, and that the statute violates the separation of powers guaranteed by the Michigan constitution.  Petitioner further claims that the statutory amendments violated his rights under the Ex Post Facto Clause of the United States Constitution.

It is not clear from his pleadings whether petitioner contends that the statute itself constitutes a prohibited *ex post facto* law, or whether he is challenging various administrative rules regarding

18

parole which have been altered since his conviction.  In either case, his *ex post facto* claim is without merit.  Article 1, § 10 of the United States Constitution prohibits states from passing *ex post facto* laws.  In *Collins v. Youngblood,* 497 U.S. 37 (1990), the Supreme Court explained that the Ex Post Facto Clause of the U.S. Constitution incorporated "a term of art with an established meaning at the time of the framing of the Constitution."  *Id.* at 41.  In connection with this interpretation, the Court held that the Clause targets laws that "retroactively alter the definition of crimes or increase the punishment for the criminal act." *Collins,* 497 U.S. at 43 (*citing to Calder v. Bull,* 3 U.S. (Dall.) 386, 391-392 (1798)(Chase, J.); *Beazell v. Ohio,* 269 U.S. 167, 169-170 (1925)).  To fall within the *ex post facto* prohibition, a law must be retrospective, *i.e.*; "it must apply to events occurring before its enactment" and it "must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29 (1981).  Here, petitioner was convicted and sentenced in 2006, for crimes which occurred in 2005.  Thus, 1992 Mich. Pub. Act 181, which became effective in 1992, was not retrospectively applied to petitioner, and its application to petitioner does not violate the Ex Post Facto Clause.  *See Masarik v. Governor of Mich.*, No. 2:08-CV-12218, 2008 WL 2608184, at *1 (E.D. Mich. June 30, 2008) (Borman, J.); *Alsup v. Governor*, No. 08-10981, 2008 WL 880000, at *1 (E.D. Mich. Apr. 1, 2008) (Roberts, J.).

To the extent that petitioner is challenging not the statute itself, but retroactive application of parole guidelines or Parole Board policies, his claim is likewise without merit because retroactive applications of this type do not implicate the Ex Post Facto Clause.  Particularly on point is the Second Circuit's decision in *Barna v. Travis*, 239 F.3d 169 (2d Cir. 2001).  In that case, the prisoner argued that the Ex Post Facto Clause was violated by the application of amended parole guidelines in her case.  The court rejected this argument, noting that the New York parole statutes gave the

19

parole board complete discretion in granting or denying parole, and that the guidelines were, pursuant to statute, created by the board for the purpose of aiding in its exercise of discretion. *See id*. at 171. In light of this scheme, the court rejected the prisoner's ex post facto argument, explaining:

> Nor is there merit in plaintiffs' claims that State parole procedures adopted after they were incarcerated violate the Ex Post Facto Clause. That Clause applies only to "legislative action that retroactively 'punishes as a crime an act previously committed, which was innocent when done,' 'makes more burdensome the punishment for a crime, after its commission,' or 'deprives one charged with crime of any defense available according to law at the time when the act was committed.'" *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir.1997) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). A law that is merely procedural and does not increase a prisoner's punishment cannot violate the Ex Post Facto Clause even when applied retrospectively. *See California Dep't of Corrections v. Morales*, 514 U.S. 499, 507-09, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).
>
> The Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion. *See, e.g.*, *DiNapoli v. Northeast Regional Parole Commission*, 764 F.2d 143, 145-47 (2d Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). Such guidelines "are not 'laws' within the meaning of the ex post facto clause." *Id*. at 147; *Beltempo v. Hadden*, 815 F.2d 873, 875 (2d Cir.1987) (quoting *DiNapoli* ).

*Id*. Michigan's parole guidelines, like those of New York considered in *Barna*, were created by the Board pursuant to statute, and are designed to guide the Board in its exercise of discretion. And, like the New York parole statutes, "Michigan's parole statute does not create a protected liberty interest in parole because the statute does not place any substantive limitations on the discretion of the parole board through the use of particularized standards that mandate a particular result." *Johnson v. Renico*, 314 F. Supp. 2d 700, 712 (E.D. Mich. 2004) (Gadola, J.). Thus, for the reasons explained by the court in *Barna*, petitioner's ex post facto claim is without merit. *See also*, *Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir. 1986); *cf. Shabazz v. Gabry*, 123 F.3d 909, 915 (6th Cir. 1997). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this

claim.

Finally, petitioner's claim that the statute was not validly enacted under the Michigan constitution and that the statute violates the separation of powers between branches of state government is not cognizable on habeas review because it raises an issue of state law. It is well established that "a federal court may not grant habeas relief based on 'a perceived error of state law.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). As the Supreme Court long ago explained, "whether the statutes of a legislature of a state have been duly enacted in accordance with the requirements of the constitution of such state is not a federal question[.]" *Leeper v. Texas*, 139 U.S. 462, 467 (1891). Thus, petitioner's claim that the enactment of 1992 Mich. Pub. Act 181 was not proper under the Michigan constitution is not cognizable on habeas review. *See Swantak v. Governor*, No. 08-10939, 2008 WL 919624, at *1 (E.D. Mich. Apr. 2, 2008) (Tarnow, J.); *Alsup*, 2008 WL 880000, at *1. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief based on his constitutional challenges to 1992 Mich. Pub. Act 181.

E.    *Petitioner's Motion for Release from Custody*

In a separately filed motion, petitioner seeks release from custody pending review of his habeas application. The Court should deny this motion.

Release from custody pending the disposition of an application for habeas relief–either while the petition is pending in the District Court or while an appeal from a denial of the petition is pending in the Court of Appeals–is "reserved . . . for extraordinary cases involving special circumstances or a high probability of success." *United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994) (internal quotation omitted); *see also*, *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, Circuit

Justice); *Lordi v. Ishee*, 22 Fed. Appx. 585, 586 (6th Cir. 2001); *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990). Petitioner has identified no extraordinary circumstances which would justify his release. Nor is there a high probability of success because, as explained above, petitioner has no constitutional right to release on parole and his constitutional claims are without merit or not cognizable on habeas review. Further, release pending disposition of petitioner's habeas application would be particularly inappropriate here because even if petitioner's claims had merit, the relief to which he would be entitled would not be release from custody but a new parole consideration or new trial. Because petitioner has not demonstrated a high probability of success on his claims and has not offered any special circumstances justifying release pending the disposition of his habeas application, the Court should deny petitioner's motion for release from custody.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's habeas claims are procedurally defaulted, without merit or not cognizable on habeas review. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner's motion for release from custody.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/13/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on February 13, 2009.

s/Eddrey Butts
Case Manager